'(April 8, 1896.)

## ROURKE v. BERGEVIN.

[44 Pac. 645.]

CHATTEL MORTGAGE—LABORER'S LIENS.—*Held,* under the evidence, that the court erred in finding that labor was performed at instance and request of appellant, or that he in any manner waived the lien created by his chattel mortgage in favor of the respondents' liens for labor, and also erred in holding that respondents' liens were prior to the mortgage lien of appellant.

(Syllabus by the court.)

APPEAL from District Court, Nez Perces County.

Stiles, Stevens & Tillinghast, for Appellant.

Appellant had a recorded mortgage upon the crop of wheat, which was notice to everybody that his lien was paramount. Laborers have a right, by statute, to a lien upon property of this kind (Idaho Laws 1893 p. 60), but not a preferred lien. The law of which the page referred to is a part was passed in four "chapters." Chapter 1, page 49, covers liens on buildings, etc., and section 5 defines the cases and to what extent lienors upon buildings are preferred. Chapter 2, page 55, treats of liens upon logs, etc., and section 4 gives an absolute preference in the case of such liens. Chapter 3 is of "farm laborers' liens," and confers a right of lien, but with no preference at all. Now each of these chapters is as independent of the others as if it was a separate act; and inasmuch as liens of this kind are purely statutory, there can be no possible claim that the respondents' liens took any precedence of appellant's mortgage. It was totally immaterial matter whether respondents had foreclosed their liens or not, but use of this finding was made to get in a lot of illegal costs and expenses. Having erroneously admitted the record in the former case to which appellant was not a party, the court took a step further and permitted respondents to show how much had been allowed by the court to the receiver, and how much were the costs and the amount of attorney's fees allowed in that case. Upon redemption after foreclosure by one having an interest in the estate who was not made a party to the suit, the costs of the previous foreclosure cannot be added to the principal and interest of the mortgage debt in making up the amount to be paid (2 Jones on Mortgages, sec. 1084; *Gage v. Brewster,* 31 N. Y. 218, reversing 30 Barb. 387; *Moore v. Cord,* 14 Wis. 213; *Benedict v. Gilman,* 4 Paige, 58; *Vroom v. Ditmas,* 4 Paige, 526; *Hosford v. Johnson,* 74 Ind. 479); nor can the attorney's fees of the mortgagee in the foreclosure suit be added. (*Bondurant v. Taylor,* 3 G. Greene, 561.)

James W. Reid, for Respondents, cites no authorities in his brief.

SULLIVAN, J.—This   action was brought to foreclose a chattel mortgage given by Bergevin Brothers & Martin to T. F. Rourke, to secure the payment of certain promissory notes amounting, in the aggregate, to $22,250, with interest thereon at the rate of ten per cent per annum.   The mortgage is dated January 1, 1893, and was given on all wheat to be raised and harvested in the year 1893 on about 3,069 acres of land situated on the Nez Perces Indian reservation in Nez Perces county. The complaint is in the usual form for the foreclosure of a chattel mortgage.   Bergevin Brothers & Martin leased the land above referred to for the purpose of raising wheat thereon, and the appellant, T. F. Rourke, loaned them money, and took the mortgage above referred to as security therefor.   It appears from the record that the following contract was entered into on the 8th of July, 1893, by Bergevin Brothers & Martin with Jackson, Vannice & Bundy, to wit:

"Genesee, Idaho, July 8th, 1893.

"Article to harvesting and   threshing between Bergevin Brothers & Martin, parties of the first part, and Jackson, Vannice & Bundy, parties of the second part, this day, witnesseth, and agreed to do said work, viz., in a good husbandman manner.   Parties of the second part have agreed to cut all grain, belonging to the parties of the first part, on said leased land on the Nez Perces reservation, consisting of about 3,000 acres, more or less.   Consideration, $1.25 per acre for cutting, and $4\frac{1}{2}$ cents per bushel for threshing.   Parties of the second part agreed to hold all machinery on said crop until the completion of said crop.

"In witness whereof, we have hereunto set our hands and seals this day of July 8, 1893.

"For BERGEVIN BROTHERS & MARTIN,
"E. GIRAULT.
"B. JACKSON.
"A. M. VANNICE.
"JOHN BUNDY."

"Witnesses' signatures:
"HARRY L. McKENNEY."

Said Jackson took charge of said work, and employed the respondents on behalf of Vannice, Bundy, and himself. It also appears that one E. Girault had acted as the agent of Bergevin Brothers & Martin in making said written contract for the harvesting and threshing of said grain, and was overseeing said work for them. After the respondents had been at work for some days (according to the testimony of some of them, about three weeks), question was raised about their pay. The respondents, or some of them, saw Mr. Girault, and had a conversation with him in regard to the matter. He informed them that they would be paid for their labor. Wet weather set in, and interfered with the work. The men were not paid, and they filed laborers' liens on said crop, and foreclosed said liens without making the crop mortgagee, Rourke, a party thereto. Thereafter appellant brought this action to foreclose said chattel mortgage, and made, among others, the persons who filed said laborers' liens parties to said foreclosure suit. Said defendants answered, setting up as a defense that they had filed and foreclosed said liens, that they were employed by one Jackson, the agent of Bergevin Brothers & Martin, to assist in harvesting and threshing said grain, and that said employment had been ratified and confirmed by appellant, Rourke, through his agent, G. V. Hamilton. The cause was tried by the court, and judgment entered in favor of plaintiff, with decree of foreclosure as prayed for in the complaint; but, out of the proceeds, the court directed the payment, first, of the costs of the receivership in the proceedings to foreclose said liens, the sheriff's and clerk's fees therein, and the several judgments of the lien claimants, and, lastly, the lien of plaintiff under said chattel mortgage. A motion for a new trial was interposed, and denied by the court. This appeal is from the judgment and from the order denying the motion for a new trial.

Several errors are assigned, and among them the following: The court erred in finding that the employment of the several respondents was procured by appellant's agent, George V. Hamilton, or was approved and ratified or consented to by him, and that the court erred in finding appellant's mortgage inferior in legal right to the liens of respondents, and that ap-

pellant was not entitled to be paid out of the proceeds of said grain until the judgment of respondents, with its costs and expenses, had been paid. The court finds, as a fact, that the labor for which said liens were filed was performed at the instance and request of appellant, Rourke. The court also found that twelve of these respondents were hired between August 19 and 22, 1893, and eight of them between September 1st and 22d, and that two of them quit work on October 1st, fifteen of them on October 2d, and two on October 3d, 1893. It is thus found, as a fact, that all of the respondents had quit work by October 3d, except Holt, the cook, who quit on October 13th, and whose claim was not allowed by the court. The record shows that the work proceeded for some three weeks or more, and then the laborers became nervous in regard to their pay, and had a conversation with E. Girault, agent of Bergevin Brothers & Martin, in regard to it, and were told by him to go ahead, and they would get their pay. The testimony also clearly showed that George V. Hamilton, agent of appellant, appeared on the scene the last of September or first of October. The respondents, or some of them, testify that he told them to go on and complete the work, and they would get their pay. This conversation occurred the latter part of September, or 1st or 2d of October, about the time respondents quit work. Mr. Jackson testified that Hamilton told the men to go ahead and finish the work, and he would see that they got their pay. The record also shows that they did not go on and complete the work, but quit work at or about the time this conversation took place, and that the respondents were hired by Jackson to assist in the contract made by him, Vannice, and Bundy, for harvesting and threshing said grain. Respondents' witness, Hershberger, went into the details of the conversation with Hamilton more minutely than any other witness. He testified that Hamilton made the statement above referred to, on the first or second day of October, 1893, and that he (witness) worked "up to that time without promises." The court found that said witness quit work on October 1st. Hence he did no work after said promise was made by Hamilton. Hamilton had no conversation with respondents until the last of Sep-

tember or the first or second day of October. Thus it is shown that said work was done prior to any promises made by Hamilton, and could not have been done at his instance and request. There is not a scintilla of evidence to support the finding of the court that labor was performed at the instance and request of appellant, or that his agent, Hamilton, approved, ratified, or consented to the contract made by Jackson with respondents, so as in any manner to bind appellant to pay respondents for their labor. Said crop of wheat was owned by Bergevin Brothers & Martin. They entered into a written contract with Jackson, Vannice & Bundy to harvest and thresh the same. Jackson employed respondents to assist them in carrying out said contract. George V. Hamilton was the agent of appellant, Rourke, and was looking after his interest in said crop as mortgagee. Jackson was proceeding to harvest said crop in compliance with his contract with Bergevin Brothers & Martin. Respondents' counsel admits that respondents in good faith accepted employment from said mortgagors, and, when they failed to pay them, they turned to the mortgagee, and insisted on holding him liable, on the ground that G. V. Hamilton, as agent of appellant, ratified said contract of the mortgagors with the respondents. Counsel for respondents seems to lose sight of the fact that appellant was not the owner of said grain, and that he was in no way connected with the contract for harvesting and threshing the same. Appellant had nothing to do with said contract, and Hamilton, as agent for appellant, did not approve or disapprove, ratify or refuse to ratify, consent to or refuse to consent to, the contract made by Jackson with respondents, whereby they agreed to labor by the day for Jackson, Vannice & Bundy in harvesting and threshing said grain. It appears, when respondents ascertained that neither Jackson nor Bergevin Brothers & Martin could pay them the balance due, they concluded to try and hold appellant therefor. But it is not shown that appellant waived his mortgage lien in favor of respondents' liens for labor.

It is not necessary for us to pass on the other errors assigned. There being no evidence to sustain the finding of the court that said work was done at the instance and request of appellant,

and there being no evidence to show that appellant waived the priority of his mortgage lien on said crop in favor of respondents' liens for labor, the judgment of the trial court must be modified, so as to give appellant's mortgage judgment priority over the liens of respondents, as well as over all costs and charges incurred in the foreclosure of respondents' lien, and the charges and compensation of the receiver appointed therein. The case is remanded, with direction to the court below to modify said decree and judgment in conformity with this opinion. Costs of this appeal are awarded to appellant.

Morgan, C. J., and Huston, J., concur.